IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

| | | |
|---|---|---|
| LESLIE McCLUNG | § | |
| v. | § | CIVIL ACTION NO. 2:13CV143 |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | § | |

## MEMORANDUM OPINION OF THE
## UNITED STATES DISTRICT COURT

On February 19, 2013, Plaintiff initiated this civil action pursuant to the Social Security Act (The Act), Section 205(g) for judicial review of the Commissioner's denial of Plaintiff's application for Social Security benefits.

**I.     HISTORY**

On July 20, 2011, Plaintiff filed a Title II application, alleging a disability with an onset date of September 20, 2009. *See* Transcript ("Tr.") at 12 (Administrative Law Judge (ALJ) decision). The claim was denied initially and denied again on reconsideration. *Id*. The Plaintiff sought review of the denial. An administrative hearing was conducted before the ALJ on April 11, 2012. *Id*. (hearing transcript). Plaintiff appeared and testified, represented by counsel. In addition, a vocational expert, Lenora Maatouk, also testified. No medical expert was called to testify.

The ALJ issued an unfavorable decision on April 20, 2012. Plaintiff sought review. On January 28, 2013, the Appeals Council denied review. *See* Tr. at 1. Therefore, the ALJ's decision became the Commissioner's final decision. *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Plaintiff then filed the instant action for review by this Court.

## II. STANDARD

Title II of the Act provides for federal disability insurance benefits. Title XVI of the Act provides for supplemental security income for the disabled. The relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. See *Davis v. Heckler*, 759 F.2d 432, 435, n.1 (5th Cir. 1985); *Rivers v. Schweiker*, 684 F.2d 1144, 1146, n. 2 (5th Cir. 1982); *Strickland v. Harris*, 615 F.2d 1103, 11055th (5th Cir. 1980). Judicial review of the denial of disability benefits under section 205(g) of the Act, 42 U.S.C. § 405(g), is limited to "determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) (per curiam); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (per curiam).

A finding of no substantial evidence is appropriate only where there is a conspicuous absence of credible choices or no contrary medical evidence. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (per curiam); *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (per curiam). Accordingly, the Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner]'s, even if the evidence preponderates against the [Commissioner]'s decision." *Bowling*, 36 F.3d at 434; *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (per curiam); *see Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985). Rather, conflicts in the evidence are for the Commissioner to decide. *Spellman*, 1 F.3d at 360; *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990); *Anthony*, 954 F.2d 289, 295 (5th Cir. 1992); *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983). A decision on the ultimate issue of whether a claimant is disabled, as

defined in the Act, rests with the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000); SSR 96-5p.

"Substantial evidence is more than a scintilla but less than a preponderance – that is, enough that a reasonable mind would judge it sufficient to support the decision." *Pena v. Astrue*, 271 Fed. Appx. 382, 383 (5th Cir.2003); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir.1994). Substantial evidence includes four factors: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability; and (4) the plaintiff's age, education, and work history. *Fraga v. Bowen*, 810 F.2d at 1302, n.4 (5th Cir. 1987). If supported by substantial evidence, the decision of the Commissioner is conclusive and must be affirmed. *Richardson*, 402 U.S. at 390, 91 S.Ct. at 1422. The Court, however, must do more than "rubber stamp" the ALJ's decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner]'s findings." *Cook*, 750 F.2d 391, 393 (5th Cir. 1985).

A claimant for disability has the burden of proving a disability. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(I)(1)(A); 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an anatomical, physiological, or psychological abnormality which is demonstrable by acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

In order to determine whether a claimant is disabled, the Commissioner must utilize a five-step, sequential process. *Villa*, 895 F.2d at 1022. A finding of "disabled" or "not disabled" at any step of the sequential process ends the inquiry. *Id.*; *see Bowling*, 36 F.3d at 435; *Harrel*, 862 F.2d at 475. Under the five-step sequential analysis, the Commissioner must determine at Step One whether the claimant

is currently engaged in substantial gainful activity. At Step Two, the Commissioner must determine whether one or more of the claimant's impairments are severe. At Step Three, the Commissioner must determine whether the claimant has an impairment or combination of impairments that meet or equal one of the listings in Appendix I. Prior to moving to Step Four, the Commissioner must determine the claimant's Residual Functional Capacity ("RFC"), or the most that the claimant can do given his impairments, both severe and non-severe. Then, at Step Four, the Commissioner must determine whether the claimant is capable of performing his past relevant work.

Finally, at Step Five, the Commissioner must determine whether the claimant can perform other work available in the local or national economy. 20 C.F.R. § 416.920(a). An affirmative answer at Step One or a negative answer at Steps Two, Four, or Five results in a finding of "not disabled." *See Villa*, 895 F.2d at 1022. An affirmative answer at Step Three, or an affirmative answer at Steps Four and Five, creates a presumption of disability. *Id.* The burden of proof is on the claimant for the first four steps, but shifts to the Commissioner at Step Five if the claimant shows that he cannot perform his past relevant work. *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989) (per curiam).

To obtain Title II disability benefits, Plaintiff must show that he was disabled on or before the last day of his insured status. *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir.1981), *cert. denied*, 455 U.S. 912 (1982).

### III. ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ made the following findings in the April 20, 2012 decision:

The claimant meets the insured status requirement of the Social Security Act through December 31, 2016.

The claimant has not engaged in substantial gainful activity since September 20, 2009, the alleged onset date (20 C.F.R. § 404.1571 *et seq*., and 416.971 *et seq*.).

The claimant has the following severe impairments: spondylosis, bipolar disorder, and post-traumatic stress disorder (20 C.F.R. § 404.1520[c] and 416.920[c]).

> The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.15209d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> The claimant has the residual functional capacity to perform the medium work as defined in 20 C.F.R. § 404.1567(c) and 416.967(c) except he is limited to work that involve (sic) (1) simple, routine, and repetitive tasks, (2) simple, work-related decisions, and (3) few if any workplace changes.
>
> The claimant is capable of performing past relevant work as a car washer (DOT # 919.687-014, medium, unskilled, SVP 1) and a hand packager (DOT # 920.587-018, light, unskilled, SVP 1). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (DOT C.F.R. § 404.1526 and 416.965).
>
> The claimant has not been under a disability, as defined in the Social Security Act, from September 20, 2009, through the date of this decision (20 C.F.R. § 404.1520(f) and 416.920[f]). *See* Tr. at 23.

The ALJ determined that Plaintiff was not disabled under §1614 (a)(3)A) of the Social Security Act. *See* Tr. At 23.

**IV.     DISCUSSION AND ANALYSIS**

Plaintiff was born on April 3, 1965. *See* Tr. at 126. He was forty-four years old on his alleged onset date. *See Id*. He has a high school graduate equivalency degree. *See* Tr. at 31. His past relevant work experience was as a car washer and hand packager. *See* Tr. at 20. He also traveled with a carnival for a couple of years. *See* Tr. at 58.

Plaintiff asserts that he cannot work because he suffers from psychiatric problems including bipolar disorder and post-traumatic stress disorder, hepatitis C virus infection, COPD, hypertension, a back injury, and hip and neck issues. *See* Tr. at 155, 194. He has difficulty concentrating and following instructions. The ALJ found that Plaintiff's severe impairments are bipolar disorder, post-traumatic stress disorder, and spondylosis. *See* Tr. at 14.

5

Plaintiff presents the following issues for review:

(1) Whether substantial evidence and relevant legal standards support the Administrative Law Judge's (ALJ's) residual functional capacity assessment;

(2) Whether the ALJ properly evaluated Plaintiff's credibility and discounted it for legally sufficient reasons;

(3) Whether Plaintiff met his step four burden of showing that he is unable to perform his past relevant work;

(4) Whether substantial evidence supports the ALJ's alternative step five determination that Plaintiff could perform other work that exists in significant numbers in the national economy;

(5) Whether Plaintiff satisfied his step three burden of establishing that he has an impairment that meets or equals a listed impairment; and

(6) Whether this record warrants an award of benefits.

*See* Plaintiff's Brief (Pl.'s Br.) at 1, 7-20.

**A.     The Medical Evidence**

The following evidence regarding Plaintiff's medical history is contained within the Court's record:

**Good Shepherd Medical Center** treated Plaintiff from July 13, 2011, through February 3, 2012. *See* Tr. at 234, 258. Because of shoulder pain, they did imaging of Plaintiff's right shoulder, because of his history of abdominal pain, scans of his liver, gallbladder, abdomen, pelvis, pancreas, kidneys, spleen, and prostate, and because of his history of chest pain and hypertension, they did a myocardial spect multi stress test and myocardial scan. *See* Tr. at 234, 279, 273, and 267.

**Marshall Family Health Clinic** treated Plaintiff from October 5, 2011, to December 15, 2011. *See* Tr. at 245, 257. On October 5, 2011, Plaintiff had edema in his extremities including his feet. *See* Tr. at 246-247. It was determined that he needed a cardiac stress test. *See* Tr. at 247. On November 22, 2011, Randy A. Moore, PA-C determined that Plaintiff needed an MRI of his right shoulder, but his blood pressure must be controlled and he must have a cardiac stress test before an MRI could be scheduled. *See* Tr. at 250. On December 14, 2011, Plaintiff was assessed with chronic low back pain and had edema in his bilateral extremity. The clinic scheduled Plaintiff to see a counselor the next day for his psychotic depression,. The clinic also made a referral to pain management, pending further imaging such as X-rays. *See* Tr. at 253.

**Consultative Examiner John F. Nielsen, M.D.** examined Plaintiff on October 13, 2011, because of low back pain for the past six years and hepatitis C since age twenty-seven. *See* Tr. at 236. Physical examination revealed pain induced by full range of motion of the lumbosacral spine. *See* Tr. at 237.

**East Texas Border Health Clinic** treated Plaintiff from December 22, 2011, through March 1, 2012. *See* Tr. at 309, 311. Plaintiff's therapist opined that Plaintiff "is not able to physically do the work he used to be able to do. *See* Tr. at 302. On December 22, 2011, Plaintiff reported that he recently received his Medicaid "and is 'taking care of my mental health and physical health.'" *See* Tr. at 303, 305.

Plaintiff's therapist noted his worsening anger, worsening irritability, feelings of abandonment, hopelessness, helplessness, worthlessness, loss, grief, "fear of his own demise" because of his multiple medical issues, and concern about who would care for his son, impaired immediate and

recent memory, cognitive problems and distractibility , and noted his need for cognitive restructuring, and for increased self-esteem . *See* Tr. at 295, 297-98, 301-02, 304-05.

The therapist noted Plaintiff's feelings of loss and grief about his two daughters who are not part of his life. *See* Tr. at 302. "He has communicated with both of them over the past year, due to Facebook and cell phone, but currently has neither internet nor unlimited minutes on his phone. *Id*. He "becomes very tearful when talking about his oldest daughter, because he hasn't seen her since she was 9 months old." *Id*.

B.R. Wadley, M.D. described Plaintiff's thought content and process as disorganized and persecution oriented. *See* Tr. at 285- 289. Dr .Wadley noted Plaintiff's low cognitive functioning and overall hostility. *See* Tr. at 282, 285, 289. Dr. Wadley completed a "Medical Assessment of Ability to Do Work-Related Activities Mental/Emotional." *See* Tr. at 311. He assessed Plaintiff's ability to perform the following:

> [t]he basic mental demands of competitive, remunerative, unskilled work includ[ing] the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, co- workers, and usual work situations; and to deal with changes in a routine work setting.

*See* Tr. at 311.

Dr. Wadley opined that Plaintiff has "a substantial loss of ability to meet" the following basic work-related activities: "understand, remember, and carry out detailed instructions," "maintain attention and concentration for extended periods," "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," "work in coordination with and proximity with others without being distracted by them," "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods", "respond appropriately to changes in the work

8

setting," and "be aware of normal hazards and take appropriate precautions". *See* Tr. at 312-313. Dr. Wadley opined that they "have not yet been able to achieve mood stability in Plaintiff". Dr. Wadley also noted Plaintiff "is not able to sustain stable mood for prolonged periods and continues with irritability and post-stress tolerance," and noted that Plaintiff continues to experience "mild to moderate paranoid delusions, anxiety, impaired concentration and distractability." *See* Tr. at 313.

*Hearing Testimony*

Plaintiff testified that he has his G.E.D. and two years of automotive mechanics training. *See* Tr. at 41. Plaintiff testified that the primary limitations that prevent him from working are his inability to "concentrate on one particular thing," take instruction from authority, and getting along with people. *See* Tr. at 45. Plaintiff experiences problems with his memory and is quite forgetful; this problem worsens if he is experiencing a bad day. *Id*. Plaintiff has a serious nervous condition and was uncomfortable with the door being closed completely at the hearing. *Id*. Riding in the car to the hearing, he was forced to roll down a window to manage his claustrophobic feelings. *See* Tr. at 46. Plaintiff experiences psychotic episodes and hears voices in his head: "[R]ight now I can hear them." *Id*. He also sees things that are not there: "[L]ike I see a person sitting beside you over there." *Id*. He is uncomfortable if around a lot of people. *See* Tr. at 53. He sees a therapist weekly. The therapist referred him to Dr. Wadley, his psychiatrist. *See* Tr. at 46-47, 55. The mental health professionals have had difficulty adjusting his medications to achieve mood stability. *See* Tr. at 47. Plaintiff can use a computer, but his skills are minimal at best. *See* Tr. at 40.

Plaintiff testified that his physical problems that hurt the most are his low back, hips, shoulders, and knees. *See* Tr. at 47. He has arthritis and constant back pain. *Id*. If he stands too long, his low back and hips hurt, and sometimes his legs give out on him. *See* Tr. at 48-49. If he sits from twenty minutes

to an hour, then his legs go numb. *See* Tr. at 49. It takes forty-five minutes for him to walk one and a half miles. *See* Tr. at 54. Lifting any more than twenty-five pounds hurts him. *See* Tr. at 42.

The VE testified that if a hypothetical claimant with Plaintiff's age, education, and work background had the RFC to perform medium work except limited to work involving simple, routine, and repetitive tasks, simple work-related decisions, and few if any workplace changes, then he would be able to perform Plaintiff's past work as a car washer and hand packager, each of which is medium exertional level work. *See* Tr. at 62-63. The VE further testified that the hypothetical claimant also could perform the work as a kitchen helper and as a bagger, each of which is medium exertional level work. *See* Tr. at 63. If the hypothetical claimant had to be able to alternate sitting and standing at will, then all medium work would be eliminated, but he could perform one light exertional level job, which is cashier II. *See* Tr. at 63-64.

The VE further testified that, if an individual were to miss two days of work per month, that would eliminate all jobs. *See* Tr. at 64. If an individual were late to work once per week, then he could not maintain employment. *Id*. The VE also testified that, if an individual constantly were markedly impaired in the ability to complete a normal work day without interruptions (*i.e.*, had a substantial loss of ability to meet any one or more basic work activities), for example, from psychologically based symptoms, then he could not maintain employment. *See* Tr. at 64-65.

**B.     The ALJ's RFC  Analysis**

"To determine whether a claimant is disabled, the Commissioner must utilize a five-step, sequential process." *Villa v. Sullivan*, 895  F.2d 1019, 1022 (5th Cir. 1990).  Prior to moving to Step Four, the Commissioner must determine the claimant's Residual Functional Capacity ("RFC"), or the most that the claimant can do given his impairments, both severe and non-severe.  20 C.F.R. §§

416.920(b)-(f). The RFC is the most a claimant can do in a work setting despite any limitations that claimant may have. 20 C.F.R. § 416.945(a)(1). When determining a claimant's RFC, the ALJ must consider all medically determinable impairments of which he is aware, including those that are not "severe". 20 C.F.R. § 416.945(a)(2); *see also* 20 C.F.R. §§ 416.920[c]), 416.921, and 416.923. The ALJ must make clear factual findings on this issue for his decision to stand. *See Abshire v. Bowen*, 848 F.2d 638, 641 (5th Cir. 1988).

In this case, the ALJ found that Plaintiff has the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c) and 416.967(c) except he is limited to work that involve (sic) 1) simple, routine, and repetitive tasks, (2) simple, work-related decisions, and (3) few if any workplace changes. The ALJ also found that Plaintiff is capable of performing past relevant work as a car washer (DOT # 919.687-014, medium, unskilled, SVP 1) and a hand packager (DOT # 920.587-018, light, unskilled, SVP 1). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (DOT C.F.R. § 404.1526 and 416.965). *See* Tr. at 20. The ALJ ultimately determined that the medical evidence did not substantiate Plaintiff's allegations of disability. *See* Tr. at 22.

Plaintiff argues that the ALJ erred in this case because the RFC failed to include findings regarding his ability to maintain employment. Plaintiff argues that, given that the ALJ found that his bipolar disorder was severe, and that the evidence supports the long-range and debilitating nature of his psychological condition, the ALJ was required to make specific findings or incorporate his mental limitations in the RFC. The ALJ found that Plaintiff's "mental impairment did not warrant any functional restrictions". *See* Tr. at 19.

The Fifth Circuit previously held that an ALJ errs when the ALJ fails to determine whether a claimant is capable of not only obtaining, but also maintaining, employment. *Watson v. Barnhart*, 288 F.3d 212, 218 (5th Cir.2002). The Fifth Circuit later clarified that *Watson* does not require a separate finding on a claimant's ability to maintain work in every case. *Frank v. Bamhart*, 326 F.3d 618, 619 (5th Cir. 2003) (per curiam). A separate finding is appropriate in cases in which Plaintiff's ailment "waxes and wanes in its manifestation of disabling symptoms." *Frank*, 326 F.3d at 619; *see also Perez v. Bamhart*, 415 F.3d 457, 464–65 (5th Cir.2005) (holding that Perez's claim of having "good days and bad days" did not rise to the level of impairment that would require a separate finding). Plaintiff contends that the evidence of his bipolar disorder and its effects on his functionality meet the evidentiary threshold that triggers the requirement that his ability to maintain employment be assessed in the ALJ's findings.

In *Singletary v. Bowen*, 798 F. 2d. 818 (5th Cir. 1986), the Fifth Circuit held that, in claims involving chronic mental impairments, an ALJ must make findings regarding the claimant's ability to sustain continuous employment. *Id*. at 821-823. In 2003, the Fifth Circuit held that an ALJ needn't make specific findings regarding sustainability of employment *unless* there is "evidence that a claimant's ability to maintain employment would be compromised." *Dunbar v. Barnhart*, 330 F. 3d 670, 672 (5th Cir. 2003). Thus, in this Circuit, if a claimant presents substantial evidence of a chronic mental impairment which would be expected to compromise his ability to sustain long-term employment, then the burden shifts to the ALJ insofar as he then "must" make specific findings regarding the individual's ability to sustain continuous employment. *see Singletary*, 798 F. 2d at 821-823. In this circuit, an ALJ must make specific findings regarding a claimant's ability to sustain gainful employment if the claimant presents evidence that their impairment results in intermittent, yet chronic, long-term symptomology.

In *Hunter v. Commissioner*, 2012 WL 4741231 (N.D.Tex., September 6, 2012), the District Court observed that "the ALJ failed to mention Plaintiff's medical impairment of lumbar disc disease. He failed to consider this impairment at Step Two and assess its severity." The District Court noted that considerable medical evidence supported the existence of this disease, along with testimony of the difficulties which it caused to the plaintiff. The District Court explained as follows:

> When an ALJ determines a claimant's residual functional capacity, the ALJ must consider all of a claimant's medically determinable impairments, including those that are not severe. 20 C.F.R. §§404.1545(a)(2), 404.1545(e), 416.945(a)(2), 416.945(e). A medically determinable impairment is one that is 'demonstrated by medically acceptable clinical and laboratory diagnostic techniques.' *Greenspan v. Shalala*, 38 F.3d 232, 239 (5th Cir. 1994); *quoting* 42 U.S.C. §423(d)(3).

The District Court in *Hunter* observed that a treating physician's opinion on the nature and severity of an impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence, citing *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). In addition, the ALJ must consider the entire record and cannot pick and choose only the evidence which supports his position. *Loza v. Apfel*, 219 F.3d 378, 393, 399 (5th Cir. 2000); *see also Reed v. Colvin*, 2013 WL 5314438 (N.D.Tex., September 23, 2013) (District Court held that "it is simply not clear from the record before the court whether the ALJ considered Plaintiff's actual diagnoses of borderline intellectual functioning and cognitive disorder in establishing Plaintiff's RFC; the court is not in a position to speculate that the error is harmless and that the result of the administrative proceeding would have been the same," and remanded the case).

### C. Application of Law to the Present Case

Regulations define a severe impairment as "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c)). The Fifth Circuit has held that an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).) The corollary of *Stone* is that, when an ALJ has determined that an impairment is severe at Step Two, he has found that the impairment limits or potentially limits the claimant's ability to work. *See* also *Allsbury v. Barnhart*, 460 F. Supp. 2d 717,727 (E.D. Tex. 2006)(the ALJ could not have found that plaintiff's nonexertional mental impairments do not significantly affect her residual functional capacity); *see* also 20 C.F.R. § 404.1520(c) (2005). An ALJ cannot find that any severe mental impairment does not significantly affect RFC. *Id.*; 20 C.F.R. § 404.1520(c)(2005).

*Plaintiff's Inability to Perform Work Activity on a Regular, Continuing Basis*

The VE testified that, if an individual constantly were markedly impaired in the ability to complete a normal work day without interruptions (*i.e.*, had a substantial loss of ability to meet any one or more basic work activities), for example, from psychologically based symptoms, then he could not maintain employment. *See* Tr. at 64-65. In Exhibit 8F, B.R. Wadley, M.D. opined that Plaintiff "had a substantial loss of an ability to meet any of the basic work-related activities" in the area of "completing a normal workday without interruptions from psychological based symptoms." *See* Tr. at 18. According to the VE testimony, that would render him unable to maintain employment. *See* Tr. at 64-65.

Dr. Wadley is a treating physician; he was the only mental health physician in the record. Dr. Wadley is the only physician who provided an opinion regarding a medical assessment of Plaintiff's mental/emotional ability to perform work activities. *See* Tr. at 311-13. "The opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *Greenspan*, 38 F.3d at 237; and *Brown v. Commissioner, Soc. Sec. Admin.*, 6:10cv637 (E.D. Tex., Nov. 3, 2011), *Report and Recommendation* at 6, adopted Nov. 3, 2011).

The ALJ gave considerable weight to Dr. Wadley's assessment in Exhibit 8F, but found "that assessment is somewhat limited because" other record evidence shows that Plaintiff "can concentrate for extended periods," make appropriate workplace decisions, and interact appropriately with others. *See* Tr. at 20. Concentrating for extended periods, making appropriate workplace decisions, interacting appropriately with others, and completing a normal workday without interruptions from psychological based symptoms are separate mental functions. *See* Tr. at 312-13.

Dr. Wadley's assessment is that Plaintiff is able to make appropriate workplace decisions and interact appropriately with others. *Id*. The ALJ's statement only explains what she considered to be a basis for rejecting Dr. Wadley's opinion of Plaintiff's impaired ability to concentrate. In fact, the ALJ's statement indicates that the record evidence does not contradict Dr. Wadley's other opinions.

SSR 96-8p requires the RFC assessment to include a narrative description "of how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and non medical evidence (e.g., daily activities, observations)." *Bryant v. Astrue, Comm'r of Soc. Sec.*, No. 07-50829, n. 3 (5th Cir. Apr. 2, 2008); see also SSR 96-8p. The ALJ gave no description of record evidence supporting her rejection of Dr. Wadley's assessment that Plaintiff has a substantial loss of ability to

15

meet any of the basic work-related activities in the area of completing a normal workday without interruptions from psychological based symptoms. Dr .Wadley's assessment is not contradicted by any record evidence. The ALJ, therefore, did not fully comply with the legal standards required by SSR 96-8p and *Bryant v. Astrue, Comm'r of Soc. Sec.*, No. 07-50829, n. 3 (5th Cir. Apr. 2, 2008) in assessing Plaintiff's RFC.

The Commissioner argued that "the ALJ sufficiently accounted for Dr. Wadley's opinion about such tasks by limiting Plaintiff to work that involved only simple, work-related decisions, and low-stress occupations that involved few, if any, workplace changes". *See* Comm'r Brf at 9. The ALJ's limitation, however, does not adequately address Dr. Wadley's opinion that Plaintiff "had a substantial loss of an ability to meet any of the basic work-related activities" in the area of "completing a normal workday without interruptions from psychological based symptoms." *See* Tr. at 18. The ALJ's disregard of Dr. Wadley's opinion goes against established jurisprudence that "lay administrative law judges cannot make their own independent medical findings." *Frank v. Barnhart, Comm'r of Soc. Sec. Admin.*, 455 F. Supp. 2d 554, 560, n. 4 (E.D. Tex. 2006).

The Commissioner argues that the relevant ruling, SSR 96-8p, identifies lay evidence as relevant. *See* Comm'r Brf at 8; *See* also SSR 96-8p at *5. The cited Ruling does not allow ALJs' lay findings made on "their own independent medical findings". Such findings are prohibited by *Frank v. Barnhart, Commissioner of Social Security Administration*, 455 F. Supp. 2d 554, 560, n. 4 (E.D. Tex. 2006). The ALJ apparently did so in determining Plaintiff had the ability to complete a normal workday without interruptions from psychological based symptoms.

Substantial evidence does not support the ALJ's finding regarding this evidence. Dr. Wadley determined that Plaintiff "had a substantial loss of an ability to meet any of the basic work-related

16

activities" in the area of "completing a normal workday without interruptions from psychological based symptoms". *See* Tr. at 18. The mental RFC finding, therefore, is erroneous and not supported by substantial evidence. *See* Tr. at 16. Treating physician Dr. Wadley's uncontradicted assessment, combined with the VE's testimony that this inability would preclude an individual from maintaining any employment, constitutes substantial evidence that Plaintiff cannot maintain employment. Nothing in the record contradicts Dr. Wadley's assessment or the vocational expert testimony. See Tr. at 64-65; 312.

The ALJ's failure to assess the functional limitations resulting from Plaintiff's severe Bipolar Disorder renders the RFC finding erroneous. As the ALJ stated the standard, a severe impairment "significantly limits an individual's ability to perform basic work activities". *See* Tr. at 13. The ALJ's RFC finding, however, is beyond "the maximum degree to which" Plaintiff can perform "the physical-mental requirements of jobs." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2--Medical-Vocational Guidelines, 200(c).

Because there is no indication that the ALJ properly considered the functionality of Plaintiff's medically documented bipolar disorder in determining Plaintiff's RFC, the ALJ's decision is not supported by substantial evidence. In this case, the finding was prejudicial to the Plaintiff and rises to the level of reversible error.

The claimant's RFC is considered twice in the Five-Step sequential analysis of a disability claim. *See Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). At the Fourth Step, it is used to determine whether the claimant can still perform his past relevant work. *Id.* At the Fifth Step, it is used to determine if the claimant can perform any other work in the national economy. *Id*. At Step Five, the ALJ determined that Plaintiff could perform the jobs of car washer (DOT # 919.687-014,

17

medium, unskilled, SVP 1) and a hand packager (DOT # 920.587-018, light, unskilled, SVP 1). *See* Tr. at 20. At the administrative hearing, the VE testified that if a hypothetical claimant constantly were markedly impaired in the ability to complete a normal work day without interruptions (*i.e.*, had a substantial loss of ability to meet any one or more basic work activities), for example, from psychologically based symptoms, then he could not maintain employment. *See* Tr. at 64-65.

Had the ALJ included all of Plaintiff's limitations in the RFC assessment, there existed a reasonable possibility that the findings would have been different. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995)(remand is appropriate when evidence is evaluated under the correct legal standards, and there is reasonable probability that the new evidence or evaluation would change the outcome of the decision.).

The ALJ based his findings at Step Four and Five on his RFC assessment. It cannot be said that the ALJ's RFC finding accurately reflects Plaintiff's capability. Because the disability determination is based in large part on the RFC finding, an improper RFC could have led to an improper disability determination. *See Mahoney v. Astrue*, 3:09-CV-810-L, 2009 WL 3097334, at *9 (N.D. Tex. Sept. 25, 2009). The ALJ's RFC finding resulted from failure to correctly apply the applicable legal standards and is not supported by substantial evidence. Therefore, a reversal of the Commissioner's decision denying benefits and remand of Plaintiff's claim is necessary. *See Carey v. Apfel*, 230 F.3d 131, 143 (5th Cir. 2000). This error requires a remand; as a result, the remainder of the Plaintiff's claims need not be addressed.

V.     ORDER

In light of the foregoing, it is accordingly ordered that the above-entitled social security action is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) with instructions for further consideration consistent with the findings above.

**So ORDERED and SIGNED this 23rd day of September, 2014.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE